**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JIAWEN SHI,<br><br>               Petitioner,<br><br>     v.<br><br>FERETI SEMAIA, et al.,<br><br>               Respondents. | Case No. 5:26-cv-02054-MBK<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Jiawen Shi, a native and citizen of the People's Republic of China, is in the custody of the Department of Homeland Security ("DHS") at the Adelanto Detention Facility. Mr. Shi immigrated to the United States in 2019. He is subject to an order of removal that became administratively final in April 2019. He was released from the custody of DHS under an order of supervision ("OSUP") in May 2019. For the past seven years, Mr. Shi settled in the United States, maintained a job, paid taxes, created ties with his community, and complied with the conditions of his release.

On April 10, 2026, Mr. Shi reported for his scheduled Immigration and Customs Enforcement ("ICE") check-in. At the appointment, ICE officers

arrested him and later transferred him to the Adelanto Detention Facility. During his confinement, the Government has requested travel documents from China but has not received a response.

In this habeas action, Mr. Shi claims that his re-detention violates 8 U.S.C. § 1231(a) because the Government cannot show that there is a significant likelihood of his removal in the reasonably foreseeable future. He also argues that his arrest and re-detention violates the Fifth Amendment and immigration regulations applicable to revocation of an OSUP. Based on these alleged violations, Mr. Shi asks the Court to issue a writ of habeas corpus requiring his immediate release from custody, among other relief.

For the reasons that follow, the Court finds that it has jurisdiction to hear Mr. Shi's claims, that the Government has the burden to demonstrate that Mr. Shi's removal is reasonably foreseeable, and that the Government has not shown that Mr. Shi's removal is reasonably foreseeable. Accordingly, the Court concludes that Mr. Shi's ongoing detention is not authorized by Section 1231 and grants a writ of habeas corpus requiring Mr. Shi's immediate release and preventing his re-detention unless the Government complies with the regulations governing the revocation of an OSUP.

## I.    FACTS AND PROCEDURAL HISTORY

Petitioner Jiawan Shi is a native and citizen of the People's Republic of China who entered in United States on January 10, 2019. Dkt. 1 at 5. Shortly thereafter, DHS initiated expedited removal proceedings against him. *Id.* Mr. Shi is subject to an order of removal that became administratively final on April 19, 2019. *Id.* On May 22, 2019, Mr. Shi was released from DHS custody on an OSUP. *Id.*

Petitioner has resided in Southern California for the past seven years, during which time he obtained employment and a driver's license, paid taxes, developed strong ties with his community, and complied with the terms of his OSUP. *Id.* Mr. Shi has no criminal history. *Id.* Nonetheless, on April 10, 2026, Mr. Shi was suddenly arrested by ICE when he reported for his regular ICE-check in interview. *Id.* at 5. He alleges that he was not provided a formal interview, asked whether there was any reason he should not be detained or deported, or informed of what circumstances had changed in his case that would justify revocation of his release. *Id.* at 6. He also alleges he was not informed that he was subject to imminent removal. *Id.*[1]

Petitioner filed the instant habeas Petition on April 22, 2026. Dkt. 1, 2. He asserts three causes of action: (1) the revocation of his release without notice did not comply with 8 C.F.R. § 241.13; (2) his re-detention without a bond hearing violates procedural due process and (3) his ongoing detention violates substantive due process. Dkt. 1 at 6-12. Petitioner requests that the Court (1) order his immediate release; (2) order Respondents to return all of Petitioner's belongings, including his U.S. driver's license; (3) upon release, prohibit Respondents from imposing conditions of supervision more restrictive than those previously in place under the OSUP, absent a hearing consistent with due process; (4) enjoin Respondents for re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including notice and hearing before a neutral fact-finder where Respondents must show (a) there are material changed circumstances which demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future; or (b)

---

[1] In their Answer, Respondents contend that that Mr. Shi was provided notice and an interview and attach forms documenting that notice and interview were provided on April 10, 2026. Dkt. 8-2. However, as discussed below, the forms are in English and there is no indication that the interview was conducted in Mandarin or a Mandarin translator was present.

3

Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or is a flight risk; and (5) require Respondents, should they choose to conduct such a hearing, to provide Petitioner with reasonable advance notice of the time and place of the hearing. *Id.* at 12.

The Court issued General Order 26-05 and a Briefing Schedule on April 23, 2026. Dkt. 5. Respondents filed an answer on April 30, 2026, in which they content that Petitioner failed to demonstrate that his removal is not reasonably foreseeable and that the Court lacks jurisdiction to consider the claims in the Petition. Dkt. 8. Petitioner filed his reply on May 2, 2026. Dkt. 12. The Court conducted a video hearing on May 7, 2026. At the hearing, Petitioner's counsel stated that Petitioner intended to consent to Magistrate Judge jurisdiction and subsequently filed a written consent. Dkt. 11. Respondents' counsel stated that, under General Order 26-05, Respondents previously consented to Magistrate Judge jurisdiction in immigration habeas cases and would not withdraw their consent in this case. The case will therefore proceed solely before the undersigned Magistrate Judge.

## II. DISCUSSION

The Court begins by addressing Respondents' argument that the Court lacks jurisdiction over Petitioner's claims. The Court then analyzes Petitioner's claims on the merits. For the reasons that follow, the Court concludes that Petitioner is entitled to release because the Government has not shown a significant likelihood of his removal in the reasonably foreseeable future.[2]

### A. Legal and Factual Background

---

[2] The Court declines to address due process claims.

**1. The Court Does Not Lack Subject Matter Jurisdiction.**

Petitioner seeks habeas relief pursuant to 28 U.S.C. § 2241. Section 2241 "makes the writ of habeas corpus available to all persons 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) (en banc) (quoting 28 U.S.C. § 2241(c)(3)). "The writ of habeas corpus historically provides a remedy to noncitizens challenging executive detention." *Id.* (citing *INS v. St. Cyr*, 533 U.S. 289, 301-03 (2001)). Petitioner here advances a paradigmatic habeas claim—that his confinement by federal immigration authorities violates federal law, implementing regulations, and the Fifth Amendment.

Respondents nonetheless argue that Congress stripped the federal courts' habeas jurisdiction over claims like Petitioner's through two provisions of the immigration laws, 8 U.S.C. §§ 1252(g) and 1252(b)(9). Dkt. 8 at 2. However, as courts in this district have found, Respondents' arguments cannot be reconciled with Supreme Court and Ninth Circuit authority. *See, e.g., Hernandez Cruz v. Noem*, No. 8:25-cv-02566-SB-MAA, 2025 WL 3482630, at *1-2 (C.D. Cal. Dec. 2, 2025); *Altamirano Ramos v. Lyons*, No. 2:25-cv-09785-SVW-AJR, 2025 WL 3199872, at *2-3 (C.D. Cal. Nov. 12, 2025).

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders . . . ." 8 U.S.C. § 1252(g). "The Supreme Court has instructed that we should read § 1252(g) narrowly." *Ibarra-Perez v. United States*, 154 F.4th 989, 991 (9th Cir. 2025) (citing *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020)). Section 1252(g) thus applies only to "those three specific actions themselves." *Id.* at 996.

Respondents argue that Petitioner's claims fall within one of the three listed actions because "appears to challenge the government's decision and action to detain him, which arises from DHS's decision to commence removal proceedings." Dkt. 8 at 5. But the Supreme Court has refused to "interpret [Section 1252(g)'s] language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (plurality) (citing *Reno v. American-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 482-83 (1999)). Rather, it has construed Section 1252(g) to apply to the "particular evil" it was directed against: "attempts to impose judicial constraints upon prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9. Petitioner's claims challenge his detention, not the Government's "prosecutorial discretion" to "commence" removal proceedings. As such, Section 1252(g) does not apply.

Nor does Section 1252(b)(9) apply to Petitioner's habeas claims. Section 1252(b)(9) funnels "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken . . . to remove an alien" into the procedures for review of final orders of removal—namely, petitions for review in the circuit courts. 8 U.S.C. § 1252(b)(9). Consistent with its construction of Section 1252(g), the Supreme Court has rejected an "expansive interpretation of" Section 1252(b)(9) that would apply to any claims that might conceivably "aris[e] from" immigration enforcement. *Jennings*, 583 U.S. at 293 (plurality). Among other problems, such an interpretation would render detention claims "effectively unreviewable" because, "[b]y the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place." *Id*. Accordingly, the

Court has twice held that Section 1252(b)(9) does not apply to noncitizens' claims challenging their detention without a bond hearing. *Id.*; *Nielsen v. Preap*, 586 U.S. 392, 402 (2019).

Petitioners' claims—like those at issue in *Jennings* and *Preap*—do not seek review of an order of removal or challenge "the decision to detain them in the first place or to seek removal [as opposed to the decision to deny them bond hearings]." *Preap*, 586 U.S. at 402. Accordingly, Section 1252(b)(9) does not preclude this Court from considering Petitioner's claims.

### 2.   Detention and Release Under Section 1231

Section 1231 governs the Government's authority to detain non-citizens with final orders of removal. The statute provides that the Government "shall detain" noncitizens during the "removal period." 8 U.S.C. § 1231(a)(2)(A). The "removal period" is defined as beginning on the "latest of the following": "(i) The date the order of removal becomes administratively final"; "(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or "(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." *Id.* at § 1231(a)(1)(B).

Thereafter, the statute permits—but does not require—the detention of certain noncitizens found inadmissible or removable on specified grounds, "or who have been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." *Id.* at § 1231(a)(6). Such individuals "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." *Id.*

The Supreme Court has construed Section 1231(a)(6) not to permit the "indefinite detention" of noncitizens, which would otherwise pose serious

constitutional concerns. *Zadvydas*, 533 U.S. at 690-96. The Court instead interpreted Section 1231(a)(6) to permit detention only where removal is "reasonably foreseeable." *Id*. at 699. To effectuate this limit, the Court found it "practically necessary to recognize some presumptively reasonable period of detention," which it set at six months. *Id*. at 701. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. Because the statute only authorizes a "reasonable" period of detention to effectuate removal, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*.

The Government has adopted regulations to implement its authority to detain or release noncitizens under Section 1231(a). 8 C.F.R. § 241.4, titled "Continued detention of inadmissible, criminal, and other [noncitizens] beyond the removal period," sets out "procedures DHS must follow to impose continued detention" beyond the removal period. *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021). 8 C.F.R. § 241.13, titled "Determination of whether there is a significant likelihood of removing a detained [noncitizen] in the reasonably foreseeable future," sets out procedures to implement the statutory limit recognized in *Zadvydas*. *Id*. Sections 241.13(g)(1) and 241.13(h) provide that the Government "shall" release a noncitizen on an "order of supervision" if it determines that their removal is not reasonably foreseeable, unless "there are special circumstances justifying continued detention."

For noncitizens released on an OSUP because their removal proved impracticable, the regulations also specify procedures for the Government to revoke their OSUP and re-detain them. DHS may revoke the noncitizen's OSUP if they violate their conditions of release, 8 C.F.R. § 241.13(i)(1), or "if,

8

on account of changed circumstances, [DHS] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future," 8 C.F.R. § 241.13(i)(2). *See also Hoang v. Santa Cruz*, No. 25-cv-2766-JGB-JC, 2025 WL 3141857, at *3 (C.D. Cal. Oct. 28, 2025) ("[I]f a noncitizen is subject to 8 C.F.R. § 241.13, ICE may only detain them under more limited circumstances than 8 C.F.R. § 241.4(l)...."). Thus, the regulation "requir[es] (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." *Nguyen*, 788 F. Supp. 3d at 150 (quoting *Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023)).

## B. Respondents Have Not Demonstrated that Mr. Shi may be Removed In the Reasonably Foreseeable Future

With this background in mind, the Court now turns to Petitioner's habeas claims, beginning with Petitioner's claim that he is entitled to release because the Government has not demonstrated that his removal is reasonably foreseeable.

### 1. The Government Bears the Burden to Show Petitioner's Removal is Likely in the Reasonably Foreseeable Future

This Court has previously found that, consistent with the weight of authority in this District, the Government bears the burden to demonstrate that Petitioner's removal is reasonably foreseeable to lawfully revoke his OSUP and re-detain him. *See Trieu v. Mullin*, 5:26-cv-01653-MBK, 2026 WL 1045194, at *5 (C.D. Cal. Apr. 17, 2026); *Truong v. Mullin*, 2:26-cv-03546-MBK, 2026 WL 1047908, at *6 (C.D. Cal. Apr. 15, 2026). *See also Nguyen v. Marin*, 5:26-cv-01130-JFW-MAR, 2026 WL 822535, at *3 (C.D. Cal. Mar. 20, 2026); *Truong v. Lyons*, 5:26-cv-00021-AS, 2026 WL 855150, at *6 (C.D. Cal.

Mar. 20, 2026); *Pham v. Marin*, 5:26-cv-00785-MRA-SP, 2026 WL 712946, at *4 (C.D. Cal. Mar. 11, 2026); *Espada v. Doe*, No. 5:25-cv-02983-JWH-KES, 2026 WL 181539, at *3-4 (C.D. Cal. Jan. 20, 2026), *adopted*, 2026 WL 192150 (C.D. Cal. Jan. 23, 2026); *Bui v. Noem*, No. 5:25-cv-03370-RGK-AJR, 2025 WL 4061564, at *3 (C.D. Cal. Dec. 30, 2025); *Luu v. Bowen*, No. 5:25-CV-03145-MEMF-SP, 2025 WL 3552298, at *6 (C.D. Cal. Dec. 11, 2025); *Nazarian v. Noem*, No. 25-cv-02694-KK-ADS, 2025 WL 3236209, at *5, (C.D. Cal. Nov. 3, 2025); *El Abed v. Noem*, No. 25-cv-02361-FWS-JDE, 2025 WL 3691910, at *4 (C.D. Cal. Oct. 28, 2025).

Section 241.13(i)(2) authorizes the Government to revoke a noncitizen's OSUP "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." While the regulation does not expressly state that the Government bears the burden to show a significant likelihood of removal, the legal context in which it was adopted and principles of statutory interpretation compel that result.

As discussed above, Section 241.13 was promulgated to implement the Supreme Court's decision in *Zadvydas*. *See Johnson*, 594 U.S. at 529. In *Zadvydas*, the Supreme Court instructed that "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." 533 U.S. at 701. If the Government cannot rebut the noncitizen's showing, then the noncitizen's detention is "no longer authorized by statute" and they must be released "conditioned on any of the various forms of supervised release that are appropriate in the circumstances." *Id*. at 699-700.

Section 241.13 codifies this burden-shifting framework. It first provides

10

procedures for DHS to determine whether removal is reasonably foreseeable and, if not, to authorize the noncitizen's release on an OSUP. *See* 8 C.F.R. § 241.13(d)-(g). It then provides authority for DHS to revoke a noncitizen's OSUP and re-detain them where they violated the terms of their release or "changed circumstances" establish that their removal is now reasonably foreseeable. *Id*. § 241.13(i)(1)-(3).

The provision authorizing revocation of an OSUP based on "changed circumstances," Section 241.13(i)(2), therefore only applies where the noncitizen has already been released based on DHS's determination that their removal is not reasonably foreseeable under the *Zadvydas* burden-shifting framework. *See* 8 C.F.R. § 241.13(i)(2) (authorizing revocation of "release under this section"); *id*. at § 241.13(i) (providing for conditions of release for noncitizens released upon a "determination" that their "removal is not significantly likely in the reasonably foreseeable future"). This means that noncitizens subject to revocation of their OSUP have already met their burden to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. To be consistent with *Zadvydas*, then, Section 241.13(i)(2) must be construed to place the burden DHS to "rebut" that showing by demonstrating there is a significant likelihood of the noncitizen's removal in the reasonably foreseeable future "on account of changed circumstances."

To the extent there is any ambiguity, principles of statutory construction support this reading of the regulation. "Absent specific statutory or regulatory language on the allocation of the burden of proof (as is the case in 8 C.F.R. § 241.13(i)(2)), the Court is guided by the 'default rule' that the burden falls on the party who 'generally seeks to change the present state of affairs and who therefore naturally should be expected to bear the risk of

failure of proof or persuasion.'" *Roble v. Bondi*, 803 F. Supp. 3d 766, 773 (D. Minn. 2025) (quoting *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005)).

This reading also avoids the serious constitutional concerns posed by the Government's position. *Zadvydas* construed Section 1231(a) not to authorize detention where removal is not reasonably foreseeable because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem." 533 U.S. at 690. As multiple courts have observed, the Government's reading of Section 241.13(i)(2) would raise similar concerns by placing the burden on the noncitizen to demonstrate they should be released when the Government made the unilateral determination that the noncitizen's prior showing—that their removal was not reasonably foreseeable and therefore their detention potentially indefinite—was no longer sufficient. *See Luu*, 2025 WL 3552298, at *6 ("The Supreme Court's concern that indefinite or prolonged detention would be unconstitutional applies equally to a single prolonged detention as it does to a detention that is broken up into shorter periods. To apply *Zadvydas* in the manner Respondents propose would suggest that Respondents could detain an individual for six months, release them, redetain them just outside the gates of the detention facility, and redetain them for another six months, and do this repeatedly without ever having to comply with its burden under *Zadvydas*."); *Escalante v. Noem*, No. 9:25-cv-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("Imposing the burden of proof on the alien each time he is re-detained would lead to an unjust result and serious due process implications."). Construing Section 241.13(i)(2) to place the burden on the Government is not only most faithful to the text and its context, but would also avoid these serious constitutional concerns. *See generally Flores-Chavez v. Ashcroft*, 362 F.3d

1150, 1162 (9th Cir. 2004) (applying canon of constitutional avoidance to construe regulation).

The Court therefore concludes that "'[t]he burden-shifting framework from *Zadvydas* does not apply' where the petitioner has already been 'issued a final order of removal, detained, and subsequently released on an' OSUP." *Espada*, 2026 WL 181539, at *5 (quoting *Yan-Ling X. v. Lyons*, No. 25-cv-01412-KES-CDB, 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025)). "Under section 241.13(i)(2), when ICE revokes release to effectual removal, it is *ICE's burden* to show a significant likelihood that the alien may be removed." *Id.* (cleaned up) (emphasis in original).

### 2. Respondents Have Not Met Their Burden

The Court proceeds to determine whether Respondents have met their burden under the regulation to demonstrate "changed circumstances" such that Petitioner's removal is reasonably foreseeable and his re-detention was authorized.

In their Answer, Respondents indicate that they made a request for travel documents to China on April 20, 2026. Dkt. 8-1 at 3. However, Respondents submitted no evidence to substantiate that China is likely to issue travel documents for Petitioner—either by showing that removals of Chinese immigrants are likely in general or that the Government is likely to remove Petitioner in particular. As other courts have found, publicly available information suggests that removals to China are relatively rare. *See Huang v. Albarran*, No. 1:25-cv-01308-JLT-EPG, 2026 WL 279888, at *7 (E.D. Cal. Feb. 3, 2026). Here, the Government has apparently been unable to obtain travel documents for Petitioner during the last seven years. *See Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (explaining that respondents' inability to remove petitioner in 2023 "due to §

13

1231(a)(2) concerns with travel documents" raised doubt that petitioner's removal was foreseeable); *Phan v. Beccerra*, No. 2:25-cv-1757-DC-JDP, 2025 WL 1993735, at *5 (E.D. Cal. July 16, 2025) (same).

While "there is at least some possibility that [China] will accept Petitioner at some point," "that is not the same as significant likelihood that [they] will be accepted in the reasonably foreseeable future." *Nguyen v. Scott*, 796 F. Supp. 703, 725 (W.D. Wash. 2025) (citing *Zadvydas*, 533 U.S. at 701); *see also Yang v. Kaiser*, No. 25-cv-2205-DAD-AC, 2025 WL 2791778, at *6 (E.D. Cal. Aug. 20, 2025) ("Respondents' citation to an isolated reported instance of the Chinese government accepting deportees does not, by itself, demonstrate [likelihood of removal] regarding petitioner in particular.").

Given the Respondents' inability to procure travel documents for Mr. Shi since 2019 and lack of showing that they are any closer to obtaining such documents now, the Court cannot conclude that Respondents have met their burden under 8 C.F.R. § 241.13(i)(2).

### C.  Respondents Likely Did Not Comply with Procedures to Revoke Petitioner's OSUP

Petitioner alleges that Respondents failed to follow the required procedures for revoking his OSUP—namely notice, an interview, and an opportunity to contest the basis for revocation. Dkt. 1 at 7.

When the Government revokes a noncitizen's OSUP based on its determination that there is a significant likelihood that a noncitizen may be removed in the reasonably foreseeable future, the noncitizen must be: (1) "notified of the reasons for revocation of his or her release"; and (2) given "an initial informal interview promptly after his or her return to [ ] custody to afford the[m] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). "The revocation custody review will

include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id*. Section 241.13(i)(3) therefore "require[s], at a minimum, that ICE articulate a meaningful, individualized basis for revocation sufficient to give the noncitizen notice of the grounds for re-detention and an opportunity to respond." *Vo v. Lyons*, No. 1:25-CV-533-JL-TSM, 2026 WL 323133, at *4 (D.N.H. Jan. 27, 2026).

Petitioner argues he was not afforded the notice, interview, and opportunity to be heard required by Section 241.13(i)(3). Respondents contest this allegation and attach forms indicating that Petitioner was afforded notice and an informal interview on April 10, 2026. Dkt. 8-2. However, as Petitioner's counsel confirmed at the May 7, 2026, hearing, Petitioner is a Mandarin speaker. The forms that Respondents cite are solely in English and there is no indication that they were translated or that a translator was present at the April 10, 2026, interview. It therefore does not appear that Petitioner was provided notice that he could understand or a meaningful opportunity for an interview and to be heard. To the extent that Respondents seek to re-detain Petitioner in the future, they must ensure that Petitioner not only receives the notice and interview required by the regulations, but that appropriate interpretation is provided so that Petitioner can understand the Government's basis for his re-detention and he is afforded a meaningful opportunity to respond.

### III.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Respondents to immediately release Petitioner, subject to the conditions of his prior OSUP, and preventing Petitioner's re-detention unless Respondents

15

demonstrate changed circumstances that Petitioner's removal is significantly likely in the reasonably foreseeable future and provide Petitioner adequate notice, an interview, and an opportunity to be heard; (3) Respondents shall return all of Petitioner's belongings, including his U.S. driver's license; and (4) Respondents shall file a status report within seven (7) days to confirm that Petitioner has been released from custody consistent with this order.

Dated: May 7, 2026

_____

HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE